UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re<br><br>SUSAN P. DUFRESNE,<br><br>                      Debtor<br><br>SUSAN P. DUFRESNE,<br><br>                      Plaintiff<br><br>v.<br><br>NH HIGHER EDUCATION ASSISTANCE FOUNDATION, ASSIGNEE OF GRANITE STATE MANAGEMENT & RESOURCES, AND FRANKLIN PIERCE LAW CENTER,<br><br>                      Defendants | Chapter 7<br>Case No. 04-20539-RS<br><br><br><br><br><br><br>Adversary Proceeding<br>No. 05-1178 |

**MEMORANDUM OF DECISION AND ORDER**
**REGARDING STUDENT LOAN DISCHARGE**

By her complaint in this adversary proceeding, Susan P. Dufresne seeks a discharge of her outstanding student loans on an undue hardship basis under Section 523(a)(8) of the Bankruptcy Code. Defendant New Hampshire Higher Education Assistance Foundation ("NH") is the assignee of these loans and opposes their discharge.[1]

I have jurisdiction of this matter under 28 U.S.C. § 1334. It is a core proceeding under 28

---

[1] By the same complaint, the Debtor also seeks a determination of dischargeability as to student loan debts to defendant Franklin Pierce Law Center ("Franklin Pierce"). Franklin Pierce has not responded to the complaint, and a motion for default judgment has been allowed as to Franklin Pierce.

U.S.C. § 157.

On December 2, 2005, the Court conducted a trial of the complaint. Before trial, the parties submitted a joint pretrial memorandum. At trial, only the Debtor testified and only two exhibits were admitted in evidence, both from NH and without objection. In addition, at the outset of trial, the parties stipulated as to the amount of the Debtor's student loan balance (namely, $106,325) and its exception from discharge absent an undue hardship determination by the Court. After trial, I took the matter under advisement.

In making my decision, I reviewed the pretrial submissions of the parties, including their joint pretrial memorandum, the Debtor's testimony, which I find credible, the exhibits, and applicable law. Upon consideration of the foregoing, and for the reasons set forth below, I find that the Debtor has proved by a preponderance of the evidence that excepting her student loans from discharge will cause her undue hardship within the contemplation of § 523(a)(8). The Court now makes the following findings of fact and conclusions of law in accordance with Bankruptcy Rule 7052.

### Facts

The underlying material facts in this matter are not controverted.

On December 28, 2004, the Debtor filed a voluntary Chapter 7 petition. On February 22, 2005, the Debtor commenced this adversary proceeding. On May 23, 2005, the Debtor obtained a discharge of her prepetition debts other than the student loans which are the subject of this action and certain federal and state tax obligations. Her discharged prepetition debts consist primarily of utility and consumer loan obligations in the approximate amount of $8,312, as listed in her bankruptcy schedules.

2

The Debtor is a 45-year-old woman, divorced with two children, a daughter 21 and a son 17, neither of whom is her dependent. She graduated from college in 1994 and from law school in 1997. She has taken the bar exam *nine* times but has yet to pass it. The Debtor's employment history since her 1997 law school graduation was not fully explored or disclosed at trial but seems to consist of positions as a legal assistant and real estate paralegal, thus utilizing her law school education however marginally and short of actual legal practice. In recent years she has not had full-time employment due to her father's illness (during which she served as caretaker) and her own various medical problems (primarily, a degenerative back condition requiring spinal fusion surgery past and future). She earned $42,000 in 2002, $44,000 in 2003, and $12,000 in 2004. In 2004, she also received $12,600 in disability income and $2,359 in unemployment income.

During 2005, she had a full-time job for six months at $2,800 per month and a part-time temp job during December 2005 at $1,280 per month.[2]

At present, she lives in a room in a house owned by her exhusband. Her monthly expenses are $1,780. Although she received disability and unemployment income in 2004, at present she receives no disability, retirement, or public assistance income. She has no health insurance. She owes $106,325 in student loans borrowed primarily for her law school education. The most favorable repayment program available for these student loans includes a 20-year term, interest accruals at 3.375%, a $621 monthly payment, and cancellation of debt unpaid at maturity.

NH did not present evidence sufficient to rebut the Debtor's testimony regarding her

---

[2] In her bankruptcy schedules filed in December 2004, she reported $2,393.94 in monthly income and $3,724 in monthly expenses.

financial circumstances, employment history, medical condition or health. Rather, NH directed its focus on her eligibility for the above-noted student loan repayment program. NH also tried, unsuccessfully, to establish that the Debtor has the prospect of future employment in the approximate range of $36,000 - $40,000 per annum based on her 2002 and 2003 income. NH did not dispute the Debtor's reported current income and living expenses.

Taking into account her income, expenses, and employment history, and even without the proposed $621 monthly student loan repayment, I find the Debtor's financial condition precarious at best.

## Discussion

The Debtor must prove by a preponderance of the evidence that excepting her student loans from discharge would cause her "undue hardship." 11 U.S.C. § 523(a)(8); *Grogan v. Garner*, 498 U.S. 279, 287 (1991); *In re Savage*, 311 B.R. 835, 838 (1st Cir. BAP 2004).

"Undue hardship" is not defined in the Bankruptcy Code. Instead, courts have developed various tests or approaches designed to elicit from the Debtor's life situation—her financial condition, her employment record and prospects, her family obligations, her resources actual and projected, her health and medical condition—a reasoned and principled determination of hardship, undue or not. For example, see *In re Brunner*, 831 F.2d 395, 396 (2d Cir. 1987) (adopting the district court's so-called Brunner test, a three-pronged evidentiary tool); and *In re Kopf*, 245 B.R. 731, 739-740 (Bankr.D.Me. 2000) (dissecting the so-called "totality of the circumstances test," a three-category but many-pronged evidentiary tool). These and other extant undue hardship templates are thoroughly examined in *Kopf* and in Judge Boroff's recent decision in *In re Hicks*, 331 B.R. 18 (Bankr. D. Mass. 2005). I will not replow this ground.

Rather, I note that I do not subscribe to any particular test from among those mentioned,

4

nor need I do so since the First Circuit has not yet provided a binding precedent for any. I do acknowledge that the totality of the circumstances test is favored in this district and has been employed by a First Circuit bankruptcy appellate panel. See *In re Paul*, 337 B.R. 730, 735 (Bankr.D.Mass. 2006); and *In re Lorenz*, 337 B.R. 423, 430 (1st Cir. BAP 2006). I am mindful that the defendant advocates the Brunner test as more certain and predictable in its outcome. Having considered the many cases and tests, I take the approach Federal District Judge O'Toole articulated in his recent analysis of the undue hardship test competition: " . . . the judge should consider all the relevant facts and circumstances of the particular case. Now there's an idea." *In re Nash*, 330 B.R. 323, 325 (D.Mass. 2005). I do so because student borrower circumstances differ greatly from case to case and because the use of punch-list type tests tends to focus more on the template than on the hardship. Thus, I consider the Debtor's financial history and condition, her age, her marital status, her employment record and prospects, her family obligations, her resources actual and projected, her health and medical condition, her honest effort and good faith in addressing her debts, and all other factors and considerations presented in evidence at trial to determine undue hardship.

In rendering judgment, based on these facts and circumstances, and in the absence of a congressionally mandated definition, I employ the ordinary meaning of hardship as privation, a lack of basic life necessities or comforts, and undue hardship as a privation beyond reasonable limits. Would excepting the Debtor's student loans from discharge create or increase privation for the Debtor and would it be beyond reasonable limits?

Here, in the Debtor's present circumstances, she lives at a minimal standard: she is not homeless and not entirely dependent on the kindness of strangers but her living conditions are spare and scant. Her income has declined and is uncertain. She has a debilitating medical

condition but no health insurance. Her employment prospects for 2006 and thereafter are problematical. To add a $621 monthly loan payment to her already overburdened and uncertain income—an income already insufficient to meet her expenses—constitutes a hardship that is fairly characterized as undue. So much for the present.

However, the future must also be considered. There the topography, while to some extent conjectural, is still reasonably discernible. As noted, the Debtor has not recently been regularly or fully employed nor does she expect to be. Any improvement in her financial condition that would ameliorate her privation is unlikely due to several factors: her medical condition, which will not improve though may be stabilized and in any case requires further surgery; her thus-far unsuccessful effort (however dogged and poignant) to achieve bar admission; and a real estate market that is persistently and historically cyclical, thereby rendering her employment prospects uncertain.

Conversely, and as noted, the defendant's position and argument have little to do with an attack on the Debtor's factual allegations regarding her past, present, or future financial condition or her motivation in seeking bankruptcy relief in the first place. Rather, the defendant, as reflected in its papers, evidence, and argument to the Court, advocates the following: so long as the Debtor (really, any debtor) is afforded the right to participate in a lengthy repayment program that ends in loan forgiveness, then there can be no hardship (let alone undue hardship) because there is in effect a forbearance from full collection due to the Debtor's financial circumstances. The indefinite and perhaps decades-long duration of that forbearance, the ongoing accruals of interest added to current debt, the public credit reporting of a large and growing debt in a perpetual default status, the tax consequences of a debt forgiven many years hence—these considerations are ignored in the defendant's calculus.

6

I do not consider that approach reasonable or even logical. It simply condemns a debtor whose honesty and efforts are not otherwise in question to privation beyond reasonable limits—to an ever-present and ever-growing mountain of debt which, given her reasonably foreseeable financial prospects (derived from her actual past and present circumstances), will not likely ever be repaid. There are debtors for whom repayment programs such as those proposed by NH may be appropriate. This is not such a debtor.

### Conclusion

For the reasons set forth herein, the Court finds that excepting the Debtor's student loans from discharge would impose an undue hardship on her and enters judgment for the Debtor, ruling that her student loan obligations to Defendant NH are discharged in the Debtor's bankruptcy proceeding. An order consistent with this decision will issue forthwith.

Dated: _April 25, 2006_      _Robert Somma_
　　　　　　　　　　　　　　　　　Robert Somma
　　　　　　　　　　　　　　　　　United States Bankruptcy Judge